PROGRESS ENERGY CAROLINAS, INC., PETITIONER v.
WILLIAM HOWELL STRICKLAND, RESPONDENT

No. COA06-20

(Filed 20 February 2007)

**1. Appeal and Error— appealability—condemnation—deci-sion on area—remand for appointment of commissioners—substantial right—appealable**

A condemnation order is immediately appealable if it decides questions of title or area taken. The order here, which allowed condemnation but remanded the matter to the clerk for further proceedings, decided questions of area taken.

**2. Eminent Domain— private condemnation—utility line—burden of proof on respondent**

Respondent bore the burden of proving that the court should not grant a petition by an electric utility to condemn an easement for a power line. Petitioner is a private condemnor as described in N.C.G.S. § 40A-3(a); private condemnation proceedings are governed by Article 2 of Chapter 40A. N.C.G.S. § 40A-25.

**3. Eminent Domain— private utility—garden not affected**

The trial court did not err by finding that a reasonable size garden was not affected by the easement that petitioner wished to condemn, based on respondent's burden of proof and his equiv-ocal evidence about the size, location, and boundaries of the gar-den, even though the phrase "reasonable size" does not appear in N.C.G.S. § 40A-3(a). Because of this finding, that statute, which prohibits private condemnation of gardens, does not apply.

**4. Eminent Domain— private utility—extent of easement—adequately described**

A petition for condemnation by an electric utility sufficiently described the extent of the easement to be condemned and whether petitioner had the authority to·condemn.

**5. Eminent Domain— private utility—airstrip affected stat-utes read together**

Petitioner, a private electric utility, had the authority to con-demn property that affected airstrips. Statutes giving electric power companies the power of condemnation and those pro-hibiting airport hazards are in conflict; the most harmonious reading is that the "obstruction" and "hazard" language in the avi-

PROGRESS ENERGY CAROLINAS, INC. v. STRICKLAND

[181 N.C. App. 610 (2007)]

ation statutes do not pertain to airport rights and uses that become permanently condemned through a formal condemnation proceeding and for which just compensation is received.

Judge TYSON concurring in part and dissenting in part.

Appeal by respondent from judgment entered 15 August 2005 by Judge William C. Gore, Jr. in Columbus County Superior Court. Heard in the Court of Appeals 13 November 2006.

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., John C. Cooke, and Elizabeth T. Smith, and The Yarborough Law Firm, by Garris Neil Yarborough, for petitioner-appellee.*

*Vandeventer Black LLP, by David P. Ferrell, for respondent-appellant.*

MARTIN, Chief Judge.

Petitioner sought to condemn an easement across respondent's property as part of a plan to build a 230 kilovolt power line across Columbus County, North Carolina, running from a point of delivery southeast of Chadbourn, North Carolina, to Nichols, South Carolina. After a hearing before the North Carolina Utilities Commission, petitioner received a certificate of environmental compatibility and public convenience and necessity. Subsequently, petitioner filed a petition for condemnation and appointment of commissioners with the Columbus County Clerk of Superior Court on 2 February 2005. Petitioner alleged, *inter alia*, that it has the right of eminent domain, that acquisition of an easement over respondent's property is necessary and in the public interest, and that the easement needs to allow petitioner to construct, operate, and maintain electric and communication facilities. Respondent answered the petition alleging that the proposed easement would condemn his burial ground, usual dwelling house and yard, kitchen, and garden in contravention of the eminent domain statutes. Respondent further alleged that the easement would obstruct and interfere with two airstrips located on his property.

On 7 June 2005, the matter was transferred to the Superior Court Division. After a hearing on 5 July 2005, the court granted the petition and made the following findings: no one is buried within the proposed easement area and the easement to be taken does not affect any burial ground as the property existed on 2 February 2005, the easement to be taken does not affect the kitchen and reasonable size garden of

the respondent as the property existed on 2 February 2005, and the easement to be taken will affect in some way one or both of respondent's two airstrips. The court concluded that petitioner has the right to condemn the property and remanded the matter to the Clerk of Superior Court for the appointment of commissioners and for further proceedings through the normal condemnation process, which would include valuation of the rights being condemned.

Respondent filed a notice of appeal and made fifty-two assignments of error relating to three legal issues: whether petitioner has the authority to condemn by eminent domain any portion of respondent's garden for the purpose of erecting an electric transmission line, whether petitioner sufficiently described the easement to be condemned and has the legal right to condemn the rights described in the petition, and whether petitioner can exercise the power of eminent domain in light of North Carolina law prohibiting the obstruction of private airports and runways. In its reply brief, petitioner argues that the respondent's appeal is interlocutory and must be dismissed.

I.  Right to Appellate Review

[1] We first consider whether respondent's appeal in this case is an interlocutory appeal requiring dismissal. "A ruling is interlocutory 'if it does not determine the issues but directs some further proceeding preliminary to final decree.' " *Dep't of Transp. v. Rowe*, 351 N.C. 172, 174, 521 S.E.2d 707, 708 (1999) (quoting *Greene v. Charlotte Chem. Lab., Inc.*, 254 N.C. 680, 693, 120 S.E.2d 82, 91 (1961)), *rev'd on other grounds*, 353 N.C. 671, 549 S.E.2d 203 (2001). In the present case, the Superior Court determined the issue of whether to grant petitioner the right to condemn the easement but remanded the matter to the Clerk of Superior Court for the appointment of commissioners and for further condemnation proceedings; thus, the appeal is interlocutory.

"There is generally no right to appeal an interlocutory order." *Gregory v. Penland*, 179 N.C. App. 505, 509, 634 S.E.2d 625, 628 (2006). However, "a party may appeal an interlocutory order that 'affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment.' " *Rowe*, 351 N.C. at 175, 521 S.E.2d at 709 (quoting *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950)). The Supreme Court recognized in *N.C. State Highway Comm'n v. Nuckles*, 271 N.C. 1, 155 S.E.2d 772 (1967) that "orders from a con-

demnation hearing concerning title and area taken are 'vital prelimi-nary issues' that must be immediately appealed pursuant to N.C.G.S. § 1-277, which permits interlocutory appeals of determinations affect-ing substantial rights." *Rowe*, 351 N.C. at 176, 521 S.E.2d at 709; *see also Nuckles*, 271 N.C. at 14, 155 S.E.2d at 784; *N.C. Dep't of Transp. v. Stagecoach Village*, 360 N.C. 46, 48, 619 S.E.2d 495, 496 (2005).

The Supreme Court defined the concept of vital preliminary issues in two eminent domain cases, *Nuckles* and *Rowe*. The issue before the Court in *Nuckles* was which tracts the State Highway Commission was taking by eminent domain. When considering whether this was a vital preliminary issue, the Court noted:

> Obviously, it would be an exercise in futility . . . to have the jury assess damages to tracts 1, 2, 3, and 4 if plaintiff were condemn-ing only tracts A and B, and the verdict would be set aside on appeal for errors committed by the judge in determining the "issues other than damages."

*Nuckles*, 271 N.C. at 14, 155 S.E.2d at 784. By contrast, in *Rowe* the landowners appealed the issue of the unification of four of their tracts through condemnation. The Court noted: "Defendants contest only the unification of the four remaining tracts, not what parcel of land is being taken or to whom that land belongs. Thus, we hold that the trial court's interlocutory order does not affect any substantial right of these defendants." *Rowe*, 351 N.C. at 176, 521 S.E.2d at 709. The Court went on to limit the *Nuckles* holding to "questions of title and area taken." *Id.*

Applying this vital preliminary issue analysis to the case before us, the order is immediately appealable if it decided questions of title or area taken. The order in this case decided whether petitioner had the right to condemn the area of land described in the proposed ease-ment, considering the proximity of respondent's garden and airstrips to the affected land. These are questions of area taken. Here, as in *Nuckles*, it would be futile for a jury to assess damages to respondent when the easement taken could be set aside because it unlawfully takes a garden or obstructs an airport. Since the order decided vital preliminary issues concerning the area to be condemned, the inter-locutory order is appealable pursuant to N.C.G.S. § 1-277.

## II. Respondent's First Issue: The Garden

[2] We next consider whether the court erred in finding that respond-ent's reasonable size garden was not affected by the easement and

whether the law allows petitioner to condemn the proposed easement for an electric transmission line. The court found: "The easement to be taken by condemnation over Respondent's property does not affect the kitchen and reasonable size garden of the Respondent as said property existed on the date the Petition was filed, February 2, 2005." Respondent argues that the evidence does not support the court's finding and that the finding does not support the court's conclusion that "Petitioner has the right to condemn the property in the manner noted in the Findings of Fact." As a preliminary matter, we note that, in this particular case, respondent bore the burden of proving that the court should not grant the petition, according to N.C.G.S. § 40A-25. Section 40A-25 applies to eminent domain proceedings by *private* condemnors, and it states:

> On presenting such petition to the clerk of superior court, . . . all or any of the persons whose estates or interests are to be affected by the proceedings may answer such petition and show cause against granting the prayer of the same. The clerk shall hear the proofs and allegations of the parties, and *if no sufficient cause is shown against granting the prayer* of the petition, shall make an order for the appointment of three commissioners . . . .

N.C. Gen. Stat. § 40A-25 (2005) (emphasis added). Petitioner Progress Energy Carolinas, Inc. is a private condemnor as described in N.C.G.S. § 40A-3(a), which includes corporations, bodies politic, or persons whose purpose is to construct power lines and other facilities related to power generation and distribution. N.C. Gen. Stat. § 40A-3(a)(1) (2005).

The statutory authority found in § 40A-25 is distinguishable from cases cited by both respondent and the dissent in support of their assertion that petitioner bears the burden of proof. *See Redev. Comm'n of Washington v. Grimes*, 277 N.C. 634, 643-44, 178 S.E.2d 345, 350-51 (1971); *City of Charlotte v. McNeely*, 8 N.C. App. 649, 653, 175 S.E.2d 348, 351 (1970). Both *Grimes* and *McNeely* involved public condemnors, who are not governed by § 40A-25. *See* N.C. Gen. Stat. § 40A-3(b)-(c) (2005) (defining public condemnors); N.C. Gen. Stat. § 40A-19 (2005) (limiting the application of § 40A-25 to "[a]ny private condemnor enumerated in G.S. 40A-3(a)"). Furthermore, both *Grimes* and *McNeely* cite to Chapter 40 of our General Statutes, which was repealed in 1981. 1981 N.C. Sess. Laws ch. 919, § 1. Public condemnation proceedings are governed by what is now Article 3 of Chapter 40A, while private condemnation proceedings are governed by Article 2 of Chapter 40A.

**[3]** Having established the proper burden of proof, we consider the merit of respondent's arguments. "The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary." *Resort Realty of the Outer Banks, Inc. v. Brandt*, 163 N.C. App. 114, 116, 593 S.E.2d 404, 408 (2004). The evidence presented at the hearing was inconclusive as to the precise location of respondent's garden in relation to the proposed easement. Respondent testified about the location of his garden by describing a large rectangle with indefinite boundaries that appeared on an aerial photograph. It is apparent from the transcript that respondent offered testimony by pointing to areas of the photograph, although the gestures are not recorded in the transcript. Respondent testified orally that the garden extended from the current right of way to the house; however, respondent also testified that he did not know exactly where the proposed easement would run in relation to his garden. Considering the equivocal competent evidence about the size, location, and boundaries of the garden, and respondent's burden to show that the garden did fall within the proposed easement, the court did not err in finding that a reasonable size garden was not affected by the easement. As supported by the competent evidence, this fact is binding on appeal.

Respondent argues the court erred in concluding, based on this finding, that petitioner had the right to condemn respondent's garden in contravention of the plain language of N.C.G.S. § 40A-3(a), governing private condemnors, which states: "No such condemnor shall be allowed to have condemned to its use, without the consent of the owner, his burial ground, usual dwelling house and yard, kitchen and garden, unless condemnation of such property is expressly authorized by statute." N.C. Gen. Stat. § 40A-3(a) (2005). Although this statute in fact limits a private condemnor's power to condemn a garden, the court's conclusion in the present case does not contravene the statute. The trial court did not find that the proposed easement would affect the respondent's garden, which finding would have triggered the § 40A-3 limitation. Rather, the court concluded that petitioner has the right to condemn based on the finding that a reasonable size garden would not be affected.

Respondent further argues the court used the wrong standard when it made a finding with regard to a "reasonable size garden" because such language does not appear in the statute. We acknowledge that N.C.G.S. § 40A-3 does not use the standard of a "reasonable size garden," but in the present case this is not a fatal flaw. If the

court's findings support the conclusions of law, we will affirm the trial court's order. *See Resort Realty,* 163 N.C. App. at 116, 593 S.E.2d at 408. Here, the court found that a reasonable size garden would not be affected by the proposed easement. The finding suggests either that the whole garden, of a reasonable size, was not affected by the proposed easement or at least that the respondent did not meet his burden of proving that any portion of the garden was affected by the easement. Either reading of the finding is sufficient to support the court's conclusion that the petitioner has the right to condemn the land.

III. Respondent's Second Issue: Description of the Easement

**[4]** The second issue raised by respondent is whether the petition sufficiently described the extent of the easement to be condemned and whether petitioner has the legal authority to condemn the rights described in the petition. N.C.G.S. § 40A-20 governs what information must be alleged in the petition. It requires "a description of the property which the condemnor seeks to acquire . . ., stating in detail the nature of its public business, and the specific use of the property; and that the property described in the petition is required for the purpose of conducting the proposed business." N.C. Gen. Stat. § 40A-20 (2005). We conclude that petitioner satisfied the statutory requirements where the petition (1) included a legal description of the property and the easement area in exhibit A, (2) described its intended use as "Petitioner plans to construct across land owned by Respondent a transmission and/or distribution line consisting of one or more wires attached to poles for the purpose of transmitting and distributing electric power as part of the necessary functioning of Petitioner's electric system," and (3) further described in paragraph 8, for one and one-half pages, the nature of the right, title, and interest that it sought to condemn.

Citing *Cannon v. City of Wilmington,* 242 N.C. 711, 89 S.E.2d 595 (1955), *cert. denied,* 352 U.S. 842, 1 L. Ed. 2d 58 (1956), both respondent and the dissent assert that petitioner is required to define with particularity the location and extent of its claimed easement. *Id.* at 714, 89 S.E.2d at 597. We note that *Cannon,* a case about a public taking by the State Highway and Public Works Commission, was decided in 1955, under a previous version of the eminent domain statutes. *See id.* at 713, 89 S.E.2d at 597. Our General Assembly repealed the eminent domain laws appearing in Chapter 40 of our General Statutes in 1981 and enacted Chapter 40A. 1981 N.C. Sess. Laws ch. 919, § 1. To the extent that *Cannon* might constitute controlling precedent in the

case of a private condemnation proceeding, we rely on our General Assembly to have incorporated it into the recodified eminent domain statutes, and § 40A-20 in particular.

Similarly, we recognize that *M.E. Gruber, Inc. v. Eubank,* 197 N.C. 280, 148 S.E. 246 (1929), cited by the dissent, is not controlling precedent in this case because it pertains specifically to easements created by deed, not to eminent domain proceedings. *Id.* at 284, 148 S.E. at 248 ("An easement, of course, is an interest in land, and *if it is created by deed,* either by express grant or by reservation, the description thereof must not be too uncertain, vague and indefinite.") (emphasis added).

Respondent also cites N.C.G.S. § 40A-66 as statutory authority requiring certain descriptions to appear in the petition; however, § 40A-66 governs valuation and does not impose requirements on the petition. We do not read such requirements into the statute because "[w]hen [a] section dealing with a specific matter is clear and understandable on its face, it requires no construction." *State ex rel. Utils. Comm'n v. Lumbee River Elec. Membership Corp.,* 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969). We conclude the description of the easement sought to be condemned in the petition is sufficient.

Respondent further argues that petitioner does not have the authority to condemn an easement to construct "future facilities." As we have previously discussed, under N.C.G.S. § 40A-25, we must determine whether respondent has successfully shown that petitioner has exceeded its authority in seeking condemnation of the easement for future facilities. As all of the facilities to be built on a proposed easement are "future" facilities, petitioner's authority to condemn the easement for future facilities is granted in the statutory grant of eminent domain appearing in N.C.G.S. § 62-183, which includes the right to erect poles and towers and to establish offices and powerhouses. N.C. Gen. Stat. § 62-183 (2005). We have found no other authority suggesting that "future facilities" are excluded from the general grant; therefore, the description in the petition does not exceed petitioner's authority to condemn under our statutes. Furthermore, to the extent that petitioner shall have the right to construct future facilities, respondent may seek compensation for his loss at the valuation stage.

IV. Respondent's Third Issue: The Airstrips

[5] We turn to the final issue in this appeal, whether petitioner can exercise the power of eminent domain when it conflicts with statutes

PROGRESS ENERGY CAROLINAS, INC. v. STRICKLAND

[181 N.C. App. 610 (2007)]

governing the obstruction of private airports and runways. The alleged conflict between the statutes stems from language in N.C.G.S. § 62-183 that electric power companies may condemn by eminent domain a "right-of-way over the lands, privileges and easements of other persons and corporations" and language in the aviation statutes which declares that airport hazards are not in the public interest and obstruction of a private airport is a misdemeanor. N.C. Gen. Stat. §§ 63-30, 63-37.1 (2005). In this case, the court found that "[t]he easement to be taken by condemnation over Respondent's property will affect in some way one or both of the two (2) airstrips of the Respondent." Since respondent did not assign error to this finding of fact, it is presumed to be correct and supported by the evidence. *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982). Respondent argues that the proposed easement in this case would create both an obstruction and a hazard to respondent's airstrips and that the aviation statutes therefore prohibit petitioner from condemning the easement.

We first note the principle of statutory construction that "[i]nterpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible." *Velez v. Dick Keffer Pontiac-GMC Truck, Inc.*, 144 N.C. App. 589, 593, 551 S.E.2d 873, 876 (2001). The statutory construction advocated by respondent results in a conflict between the statutes, namely that the eminent domain statute allows condemnation of the easement near the airstrip while the aviation statutes prohibit it. The precedent for statutory construction requires that we consider whether the statutes can be read in such a way as to avoid conflict. This can be accomplished by an understanding of the language "obstruction" and "hazard" in the aviation statutes as not pertaining to airport rights and uses that become permanently condemned through a formal condemnation proceeding and for which just compensation is received. We find this to be the most harmonious reading of the two statutes because, to the extent the power lines in the easement will affect the airstrips, they constitute a condemnation of certain activity on the airstrip, rather than a hazard or obstruction. The loss of use or other effect of the easement on the airstrip may be resolved in the valuation portion of the proceedings.

Even if the statutes could not be read together to avoid conflict, any resolution of the conflict between the statutes, based on the other principles of statutory construction, would result in the eminent domain statutes controlling the present situation. We note that "the

exclusion of a particular circumstance from a statute's general operation is evidence of legislative intent not to exempt other particular circumstances not expressly excluded." *Dep't of Transp. v. Humphries*, 347 N.C. 649, 656, 496 S.E.2d 563, 567 (1998) (quoting *Batten v. N.C. Dep't of Corrections*, 326 N.C. 338, 344-45, 389 S.E.2d 35, 39 (1990)). Eminent domain statute N.C.G.S. § 40A-3(a) contains specific exemptions from the general ability of private condemnors to condemn property where it prohibits condemnation of burial grounds, houses and yards, and kitchens and gardens without the owner's consent unless authorized by statute. Since N.C.G.S. § 40A-3 contains exceptions which do not include land that affects a private airstrip, this is evidence that the legislature did not intend to exempt such land. Furthermore, "[w]hen a more generally applicable statute conflicts with a more specific, special statute, the 'special statute is viewed as an exception to the provisions of the general statute . . . .' " *Taylor v. Robinson*, 131 N.C. App. 337, 338, 508 S.E.2d 289, 291 (1998) (quoting *Domestic Electric Service, Inc. v. City of Rocky Mount*, 20 N.C. App. 347, 350, 201 S.E.2d 508, 510 (1974)). As the eminent domain statutes contain much more detail about what land may be taken for what uses, as discussed above, the aviation statutes are the generally applicable statutes and the eminent domain statutes are an exception to it.

Finally, we note that the court was required to grant the petition unless respondent successfully showed cause that condemnation of the easement is prohibited by law. Accordingly, we conclude that the North Carolina statutes grant petitioner the authority to condemn respondent's land even though it "will affect in some way one or both of the two (2) airstrips," and we affirm.

Affirmed.

Judge CALABRIA concurs.

Judge TYSON concurs in part and dissents in part by separate opinion.

TYSON, Judge, concurring in part, dissenting in part.

I concur with the majority's opinion that respondent's interlocutory appeal is properly before us. I do not agree with the remainder of the majority's opinion on the merits of respondent's appeal. Affirming the trial court is error because: (1) N.C. Gen. Stat. § 40A-3(a) exempts

**PROGRESS ENERGY CAROLINAS, INC. v. STRICKLAND**

[181 N.C. App. 610 (2007)]

and specifically prohibits petitioner from condemning respondent's kitchen and garden without the owner's consent; (2) the trial court improperly imposed a "reasonable size" standard not present in N.C. Gen. Stat. § 40A-3(a); (3) petitioner's petition does not sufficiently describe the proposed easement as required by N.C. Gen. Stat. § 40A-20 and seeks to exercise unbridled discretion over future expansions, uses, and burdens of the easement; and (4) petitioner's proposed condemnation of an easement expressly violates N.C. Gen. Stat. § 63-30 and N.C. Gen. Stat. § 63-37.1. I vote to reverse the trial court's order and respectfully dissent.

## I. Standard of Review

Our Supreme Court has stated:

It is well settled that the power of eminent domain is inherent in sovereignty. *The Legislature has the right to determine what portion of this sovereign power it will delegate to public or private corporations to be used for public benefit.* The right of eminent domain must be conferred by statute, expressly or by necessary implication, *and such statute must be strictly construed.*

*Colonial Pipeline Co. v. Neill,* 296 N.C. 503, 504, 251 S.E.2d 457, 459 (1979) (internal citations omitted) (emphasis supplied).

## II. Respondent's Kitchen and Garden

Respondent argues the trial court erred in interpreting and applying N.C. Gen. Stat. § 40A-3(a) to allow petitioner's condemnation of his kitchen and garden. I agree.

N.C. Gen. Stat. § 40A-3(a) (2005) states, *"No such condemnor shall be allowed* to have condemned to its use, without the consent of the owner, his burial ground, usual dwelling house and yard, *kitchen and garden,* unless condemnation of such property is expressly authorized by statute." (Emphasis supplied).

Our Supreme Court has stated:

The limitation contained in G.S. 40-10 [the immediate predecessor of N.C. Gen. Stat. § 40A-3(a)] as enacted by the General Assembly of 1852, chapter 92, section 1, which was an act to define the duties and powers of turnpike and plank road companies. It was codified in the Revised Code of 1855, chapter 61, section 21, and read as follows: "No such corporation shall be allowed to have condemned to its use, without the consent of the

owner, his dwelling house, yard, kitchen, garden or burial ground." This exact language was carried forward in section 1701, chapter 38, in the Code of 1883. The provision later became a part of section 2578 of the Revisal of 1905, chapter 61.

*Mount Olive v. Cowan*, 235 N.C. 259, 260, 69 S.E.2d 525, 526 (1952). Our Supreme Court has specifically recognized the limitation contained in Section 2578 of the Revisal of 1905, Chapter 61, a direct predecessor to N.C. Gen. Stat. § 40A-3(a), applies to petitioner as a private condemnor. *R. R. Manufacturing Co. v. Mecklenburg Mfg. Co.*, 166 N.C. 168, 180-81, 82 S.E. 5, 10 (1914). The prohibitions contained in the statutes have remained virtually unchanged for 155 years and have been continuously re-codified by our General Assembly in each revisal of the North Carolina General Statutes. *Mount Olive*, 235 N.C. at 260, 69 S.E.2d at 526.

### A.  Burden of Proof

The petitioner bears the burden of: (1) proving a legal right to condemn the property described in the petition; (2) establishing the legal sufficiency of the petition; and (3) showing affirmative compliance with all applicable statutory provisions. *See Redevelopment Comm. v. Grimes*, 277 N.C. 634, 643, 178 S.E.2d 345, 350 (1971) (The petitioner "must exercise the power of eminent domain pursuant to Chapter 160 and Chapter 40, and in order to invoke the power of eminent domain petitioner must affirmatively allege or prove compliance with the statutory requirements."); *City of Charlotte v. McNeely*, 8 N.C. App. 649, 653, 175 S.E.2d 348, 351 (1970) ("[W]hen the City undertook to exercise the power of eminent domain which had been granted to it by the Legislature, it was necessary that it both allege and prove compliance with statutory procedural requirements."). The General Assembly's limited delegation of eminent domain to petitioner, as a private condemnation authority, is expressly limited by Articles One and Two of N.C. Gen. Stat. § 40A.

Petitioner carries the burden to prove the proposed condemnation of an easement does not violate N.C. Gen. Stat. § 40A-3(a). *Id.* The trial court and the majority's opinion erroneously shifts the burden onto respondent to prove petitioner's purported easement actually condemns respondent's kitchen or garden. The majority's opinion relies on N.C. Gen. Stat. § 40A-25 to assert "respondent bore the burden of proving that the court should not grant the petition[.]" I disagree.

"It is a well established principle of statutory construction that a section of a statute dealing with a specific situation controls, with respect to that situation, [over] other sections which are general in their application." *Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969). "When, . . . [a] section dealing with a specific matter is clear and understandable on its face, it requires no construction." *Id.*

N.C. Gen. Stat. § 40A-25 is a statute of general applicability that applies, as the majority states, "to eminent domain proceedings by private condemnors." N.C. Gen. Stat. § 40A-3(a) is a specific prohibition exempting from private condemnation an owner's "burial ground, usual dwelling house and yard, kitchen and garden" without the condemnor proving either "the consent of the owner" or that the condemnation is "expressly authorized by statute." This statute clearly and unambiguously places the burden on petitioner to either show "consent of the owner" or that the condemnation is "expressly authorized by statute." N.C. Gen. Stat. § 40A-3(a). This specific statute trumps the general provisions of N.C. Gen. Stat. § 40A-25. *Utilities Comm.*, 275 N.C. at 260, 166 S.E.2d at 670.

### B. N.C. Gen. Stat. § 62-183 and § 62-184 (2005)

In the absence of the owner's consent, petitioner argues its power to condemn respondent's kitchen and garden "is expressly authorized by statute" based upon N.C. Gen. Stat. §§ 62-183 and 62-184. N.C. Gen. Stat. § 40A-3(a). I disagree.

N.C. Gen. Stat. § 62-183 is a legislative delegation of a portion of the state's eminent domain powers to private condemnors, to include public utilities. N.C. Gen. Stat. § 62-183. The powers granted to petitioner in N.C. Gen. Stat. § 62-183 are expressly limited by the provisions of N.C. Gen. Stat. § 62-184 which expressly restate the prohibitions contained in N.C. Gen. Stat. § 40A-3(a):

The dwelling house, yard, kitchen, garden or burial ground of the owner may be taken under G.S. 62-183 *when the company alleges, and* upon the proceedings to condemn *makes it appear* to the satisfaction of the court, that it owns or otherwise controls not less than seventy-five percent (75%) of the fall of the river or stream on which it proposes to erect its works, from the location of its proposed dam to the head of its pond or reservoir; *or when the Commission, upon the petition filed by the company, shall, after due inquiry, so authorize.*

N.C. Gen. Stat. § 62-184 (emphasis supplied).

**PROGRESS ENERGY CAROLINAS, INC. v. STRICKLAND**

[181 N.C. App. 610 (2007)]

Here, petitioner does not propose to erect any "works" on a "river or stream." The State Utilities Commission ("the Commission") did not "so authorize" petitioner's taking of respondent's kitchen and garden. *Id.* The record clearly shows the Commission specifically avoided ruling on this issue and concluded, "The remaining issues regarding the valuation of land and the presence of burial grounds, gardens, and kitchens are issues which need not be resolved in the current certification proceeding *but are left to be resolved,* if necessary, *in the final acquisition of right-of-way for the new transmission line.*" (Emphasis supplied). Petitioner's asserted power to take respondent's kitchen and garden is: (1) without respondent's consent; (2) not authorized by North Carolina statutes; and (3) not "so authorized" by the Commission. *Id.*

N.C. Gen. Stat. § 40A-3(a) is an express reservation by the General Assembly from its delegation under the police power of eminent domain to private condemnors to take private property unless the property is acquired with the owner's consent or through the authority granted in another statute. N.C. Gen. Stat. § 40A-3(a). The General Assembly's prohibitions contained in N.C. Gen. Stat. § 40A-3(a) are expressly recited in N.C. Gen. Stat. § 62-184. The uses and classes of private property exempt from being taken are recited verbatim. N.C. Gen. Stat. § 62-184.

The exempt properties are those regarded as worthy of the highest protections from interference by others and are so closely related to a person's shelter, food, maintenance, and the sacred grounds containing the remains of family members. These prohibitions have been maintained and continued virtually unchanged for over 155 years, for more than one half of the time of North Carolina's existence as a state. When the statutes are read together, the identical exemptions and prohibitions show the General Assembly's clear intent to prohibit a private condemnor from taking another owner's specified private property unless the condemning entity proves the consent of the owner or strict compliance with the requirements contained in both N.C. Gen. Stat. § 40A-3(a) and N.C. Gen. Stat. § 62-184.

## C. Condemnation of Respondent's Kitchen and Garden

The issue is whether petitioner's proposed easement condemns portions of respondent's kitchen and garden. Petitioner argues the proposed easement does not condemn a portion of respondent's garden. I disagree.

Here, petitioner expressly carries the burden to prove the proposed easement does not condemn respondent's kitchen or garden. *See Redevelopment Comm.*, 277 N.C. at 643, 178 S.E.2d at 350 (Petitioner "must exercise the power of eminent domain pursuant to Chapter 160 and Chapter 40 and in order to invoke the power of eminent domain *petitioner must affirmatively allege or prove* compliance with the statutory requirements." (emphasis supplied)); *City of Charlotte,* 8 N.C. App. at 653, 175 S.E.2d at 351 ("[W]hen the City undertook to exercise the power of eminent domain which had been granted to it by the Legislature, it was necessary that it both *allege and prove* compliance with statutory procedural requirements." (emphasis supplied)).

Respondent's uncontradicted testimony showed the land petitioner seeks to condemn has been owned by respondent's family for over a hundred years and consists of his home place, kitchen, garden, burial ground, and yard. Respondent did not consent to petitioner's taking. Respondent identified the parameters of the garden his family had established and used for many years and testified petitioner's proposed condemnation would take portions of the garden. Respondent testified the petitioner's surveying stake was placed in the middle of the garden. Petitioner failed to present any evidence whatsoever to rebut respondent's testimony and other evidence admitted. Petitioner failed to meet its burden to prove the proposed easement does not condemn respondent's garden and does not violate N.C. Gen. Stat. § 40A-3(a). The trial court erred by failing to rule petitioner's condemnation violated N.C. Gen. Stat. § 40A-3(a).

The trial court also erred in interpreting and applying N.C. Gen. Stat. § 40A-3(a). The trial court's finding of fact numbered 23 states: "The easement to be taken by condemnation over Respondent's property does not affect the kitchen and reasonable size garden of the Respondent as said property existed on the date the Petition was filed, February 2, 2005." The trial court hand wrote the words "reasonable size" into the remaining typed portions of finding of fact 23. The trial court improperly imposed a quantification and a reasonableness standard onto the size or extent of respondent's garden that does not appear in N.C. Gen. Stat. § 40A-3(a).

As noted, N.C. Gen. Stat. § 40A-3(a) states in relevant part:

No such condemnor shall be allowed to have condemned to its use, without the consent of the owner, his burial ground, usual

PROGRESS ENERGY CAROLINAS, INC. v. STRICKLAND

[181 N.C. App. 610 (2007)]

dwelling house and yard, kitchen and garden, unless condemnation of such property is expressly authorized by statute.

Our Supreme Court has stated "it is well settled that where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *Union Carbide Corp. v. Offerman*, 351 N.C. 310, 314, 526 S.E.2d 167, 170 (2000) (internal quotations and citations omitted). The right of eminent domain "must be strictly construed." *Colonial Pipeline Co.*, 296 N.C. at 504, 251 S.E.2d at 459.

N.C. Gen. Stat. § 40A-3(a) is clear and unambiguous and does not contain a "reasonable size" standard to allow the trial court to limit, ignore or fail to enforce the express terms of the statute. Under N.C. Gen. Stat. § 40A-3(a), our General Assembly has strictly protected, for 155 years, a landowners "burial ground, usual dwelling house and yard, kitchen and garden." N.C. Gen. Stat. § 40A-3(a). Allowing the trial court to judicially impose a "reasonable size" standard on respondent's kitchen and garden would allow a court to impose a "reasonable size" standard on respondent's home and burial grounds that is not allowed by the statute. The trial court erred as a matter of law by judicially re-drafting the statute and imposing a "reasonable size" limitation that does not appear in N.C. Gen. Stat. § 40A-3(a). *Union Carbide Corp.*, 351 N.C. at 314, 526 S.E.2d at 170; *Colonial Pipeline Co.*, 296 N.C. at 504, 251 S.E.2d at 459.

### III. Description of the Proposed Easement

Respondent argues petitioner's petition does not sufficiently describe the easement to be condemned and failed to define with particularity the rights petitioner purports to take. I agree.

N.C. Gen. Stat. § 40A-20 (2005) states the information that must be stated in a petition for condemnation and requires, in relevant part:

The petition shall be signed and verified. If filed by the condemnor, *it must contain a description of the property which the condemnor seeks to acquire*; and it must state that the condemnor is duly incorporated, and that it is its intention in good faith to conduct and carry on the public business authorized by its charter, *stating in detail the nature of its public business, and the specific use of the property*[.]

(Emphasis supplied). Petitioner was required to define with particularity: (1) the location and description of any claimed easement; and, (2) the "specific use[s]", burdens, and extent of any claimed easement. *Id.*; *Cannon v. City of Wilmington*, 242 N.C. 711, 714, 89 S.E.2d 595, 597 (1955), *cert. denied*, 352 U.S. 842, 1 L. Ed. 2d 58 (1956). "An easement, of course, is an interest in land, and, . . . the description thereof must not be too uncertain, vague and indefinite." *Gruber v. Eubank*, 197 N.C. 280, 284, 148 S.E. 246, 248 (1929). The purpose, burdens, and allowed uses of an easement must "be set forth precisely." Patrick K. Hetrick & James B. McLaughlin, Jr., Webster's Real Estate Law in North Carolina § 15-9 (5th ed. 1999).

Petitioner also bears the burden of establishing the legal sufficiency of the petition. *See Redevelopment Comm.*, 277 N.C. at 643, 178 S.E.2d at 350; *City of Charlotte*, 8 N.C. App. at 653, 175 S.E.2d at 351. While the petition provides a legal description of the easement area to be taken, it fails to describe with particularity the specific uses, burdens, and extent of the easement, attempts to provide petitioner with unbridled discretion over future additional uses and burdens and structures within the easement, and purports to muzzle respondent's objections or assertion of his underlying property rights. *Cannon*, 242 N.C. at 714, 89 S.E.2d at 597.

The petition failed to describe the number or location of power lines and poles to be constructed across respondent's property lines, the height of power lines, and the voltage of the lines, or other improvements to be located on the easement. The proposed easement states, "Petitioner reserves the right to construct future facilities within said easement area and *Respondent shall not interfere with or object to the construction of said future facilities.*" Without the statutorily required specificity, petitioners' purported "easement" is actually a taking of all of respondent's rights, title, and interest in the property described in the petition under the guise of an easement. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441, 73 L. Ed. 2d 868, 886 (1982) ("[A] permanent physical occupation of property is a [*per se*] taking.").

Petitioner's failed to allege with particularity the extent of the specific uses, burdens, and improvements it seeks to take within the claimed easement in their petition. *Cannon*, 242 N.C. at 714, 89 S.E.2d at 597; N.C. Gen. Stat. § 40A-20. Petitioner's also failed to meet their burden of establishing the legal sufficiency of the petition. *See Redevelopment Comm.*, 277 N.C. at 643, 178 S.E.2d at 350; *City of*

*Charlotte*, 8 N.C. App. at 653, 175 S.E.2d at 351. The trial court erred by not dismissing petitioner's petition.

## IV.  Respondent's Airport

Respondent also argues petitioner cannot exercise the power of eminent domain in contravention of North Carolina law prohibiting the obstruction of respondent's private airport and runways. Respondent contends that the petition must also be dismissed because the proposed easement creates an obstruction and hazard to respondent's pre-existing and established airstrips in violation of N.C. Gen. Stat. §§ 63-30 and 63-37.1 (2005). I agree.

N.C. Gen. Stat. § 63-30 states:

It is hereby found and declared that an airport hazard endangers the lives and property of users of the airport and of occupants of land in its vicinity, and also, if the *obstruction type*, in effect reduces the size of the area available for the landing, taking off and maneuvering of aircraft, thus tending to destroy or impair the utility of the airport and the public investment therein, and is therefore not in the interest of the public health, public safety, or general welfare.

N.C. Gen. Stat. § 63-37.1 states:

Any person, other than the owner or operator of an airport, who intentionally obstructs the lawful takeoff and landing operations and patterns of aircraft at an existing public or private airport shall be guilty of a Class 1 misdemeanor.

An airport is defined in N.C. Gen. Stat. § 63-1 (2005) as:

(8)  "Airport" means any area of land or water, except a restricted landing area, which is designed for the landing and take off of aircraft, whether or not facilities are provided for the shelter, servicing, or repair of aircraft, or for receiving or discharging passengers or cargo, and all appurtenant areas used or suitable for airport buildings or other airport facilities, and all appurtenant rights-of-way, whether heretofore or hereafter established.

Uncontradicted testimony established respondent's airstrips and related facilities constitute an airport under N.C. Gen. Stat. § 63-1. The trial court found as fact that "The easement to be taken by condemnation over Respondent's property will affect in some way one or both of the two (2) airstrips of the Respondent." Based upon this

unchallenged finding of fact, the trial court erred by failing to conclude as a matter of law that petitioner's petition violated N.C. Gen. Stat. §§ 63-30 and 63-37.1. No finding of fact supports the trial court's conclusion of law to allow the condemnation to lawfully proceed.

As noted above, petitioner bears the burden of showing affirmative compliance with all applicable statutory provisions. *See Redevelopment Comm.*, 277 N.C. at 643, 178 S.E.2d at 350; *City of Charlotte*, 8 N.C. App. at 653, 175 S.E.2d at 351. N.C. Gen. Stat. § 63-30 and § 63-37.1 statutorily control this petition. Petitioner failed to meet its burden of showing affirmative compliance with these statutes.

The term "person" is defined in N.C. Gen. Stat. § 63-37.1 as "any individual, firm, partnership, *corporation, company*, association, joint stock association, or body politic; and includes any trustee, receiver, assignee, or other similar representative thereof." N.C. Gen. Stat. 63-1(a)(17) (emphasis supplied). N.C. Gen. Stat. § 63-37.1 is a criminal statute· of general applicability, and applies to all "persons", including petitioner in its purported exercise of their power of eminent domain. Petitioner failed to offer any evidence or argument that it or other private condemnors are specifically exempted from the statutory prohibitions of N.C. Gen. Stat. § 63-30 and § 63-37.1. ·

Petitioner failed to offer any evidence to prove its petition complied with applicable statutory provisions, N.C. Gen. Stat. §§ 63-30 and 63-37.1. The trial court's unchallenged finding of fact shows the proposed taking "will affect in some way one or both of the two (2) airstrips of the Respondent." The trial court's findings of fact do not support its conclusion of law, and compels a contrary conclusion. The trial court erred by not dismissing the petition.

## V.  Conclusion

The majority's conclusion to affirm the trial court is error because: (1) N.C. Gen. Stat. § 40A-3(a) (2005) prohibits petitioner from condemning respondent's kitchen and garden without the owner's consent; (2) the trial court judicially re-drafted N.C. Gen. Stat. § 40A-3(a) and unlawfully imposed a "reasonable size" standard on respondent's garden that does not appear and is not allowed by the clear and unambiguous language of the statute; (3) petitioner's petition does not specifically describe the uses, burdens, and extent of the proposed easement as required by N.C. Gen. Stat. § 40A-20 and seeks to enlarge, in petitioner's unbridled discretion, the uses, burdens, and structures petitioner may impose on respond-

ent in the future; and (4) petitioner's proposed imposition of an easement on respondent's airport violates N.C. Gen. Stat. § 63-30 and § 63-37.1. These errors of law, singularly or collectively, compels dismissal of petitioner's petition. I vote to reverse the trial court's order and remand with instructions to dismiss the petition. I respectfully dissent.